UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PHILLIP W. GEARHEART,

    Plaintiff,

v.                                                          Case No. 5:20-cv-218-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded.

I.

The Plaintiff was born in 1978, has a high school education, and has past relevant work experience as a groundskeeper, pizza baker, kitchen helper, manufactured homes repairman, auto body repair helper, and heating and air

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the Defendant in this suit.

conditioning installer and servicer. (R. 23, 37, 176). In December 2016, the Plaintiff applied for DIB and SSI, alleging disability as of October 10, 2016, due to dialysis, diminished kidney functioning, and a severe injury to his right side.[2] (R. 61, 175, 186). The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration. (R. 73, 89).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in February 2019. (R. 31–59, 106). The Plaintiff was accompanied by a representative at that hearing and testified on his own behalf. (R. 31, 37–52). A vocational expert (VE) also testified. (R. 52–58).

In a decision issued in June 2019, the ALJ found that the Plaintiff: (1) had not engaged in any substantial gainful activity since his alleged onset date of October 10, 2016; (2) had the severe impairments of obesity, chronic kidney disease, and status post fasciotomy of the right upper arm with skin grafts; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform a restricted range of light work with some exertional limitations; and (5) based on the VE's testimony, could not engage in his past relevant work but was capable of making a successful adjustment to other jobs that exist in significant numbers in the

---

[2] The listed dates for the Plaintiff's DIB and SSI applications are derived from the pertinent portions of record. (R. 186–88, 175–85). While the parties and the ALJ reference different dates for the Plaintiff's DIB application in their respective recitations of the administrative background, *see* (R. 15); (Doc. 31 at 1), those references appear to be in error.

national economy. (R. 15–25). Given these findings, the ALJ concluded the Plaintiff was not disabled. (R. 24).

The Appeals Council denied the Plaintiff's subsequent request for review. (R. 1–6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[3] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4).[4] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment

---

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;[5] (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove he cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*,

---

[5] The listings catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). When a claimant's affliction(s) match an impairment on the list, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

4

883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted). In evaluating whether substantial evidence supports the Commissioner's decision, a court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). While a court will defer to the Commissioner's factual findings, it extends no such deference to his legal conclusions. *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citing *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

III.

The Plaintiff raises three challenges on appeal: (1) the ALJ improperly discounted the Plaintiff's subjective complaints of pain and other symptoms; (2) the ALJ erred in making his RFC determination; and (3) the VE's testimony was not supported by substantial evidence. (Doc. 31 at 11–19, 22–25, 28–31). Because the second issue warrants remand, the Court's analysis begins there.

As noted above, at step four of the sequential evaluation process, an ALJ must determine both the claimant's RFC and his ability to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, an ALJ must decide what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. *Id.* § 404.1545(a)(1). In arriving at

this finding, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)). Medical opinions are statements from physicians or other acceptable medical sources "'that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite [his] impairment(s), and [his] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

An ALJ must state with particularity the weight given to a medical opinion and the reasons therefor. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011) (per curiam) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)). In rendering this assessment, an ALJ must take into account: (1) whether the healthcare provider who offered the medical opinion has examined the claimant; (2) the length, nature, and extent of the provider's relationship with the claimant; (3) the medical evidence and explanation supporting the provider's opinion; (4) the degree to which the provider's opinion is consistent with the record as a whole; and (5) the provider's area of specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). Although an ALJ must balance each of these factors, he is not obligated to address them explicitly in his decision. *Lawton*, 431 F. App'x at 833.[6]

---

[6] The Regulations governing the evaluation of medical opinions were amended for disability applications filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *Simon v. Comm'r*,

Medical opinions are divided into three tiers depending on whether they were provided by a (1) treating physician; (2) non-treating, examining physician; or (3) non-treating, non-examining physician. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (citations omitted). A treating physician's opinion is typically accorded the most deference because there is a greater likelihood that such a provider will "be able to give a more complete picture of the [claimant's] health history." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam). The opinion of a non-treating, examining physician, on the other hand, "[i]s not entitled to great weight," *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam)), and the opinion of a non-treating, non-examining physician is generally afforded the least deference, *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (per curiam) (citations omitted). An ALJ is ultimately "free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Id.* (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)).

---

*Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021). In his decision, the ALJ grounded his analysis of the Plaintiff's DIB and SSI claims on the older version of the Regulations, which appears to be correct since—as referenced previously—the Plaintiff submitted his DIB and SSI applications in December 2016. Notably, neither party challenges the ALJ's reliance on the older Regulations in evaluating the Plaintiff's DIB application, even though they assert—albeit mistakenly—that his DIB application was filed after the effective date of the new Regulations. Nor do the parties argue that the new Regulations would lead to a different outcome. As a result, they waive any objection they may have on the matter. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (per curiam); *Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x. 882, 885 (11th Cir. 2011) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)); *Sumlin v. Saul*, 2020 WL 7232240, at *4 n.6 (M.D. Fla. Nov. 23, 2020) (citing *Simpson*, 423 F. App'x at 885), *report and recommendation adopted*, 2020 WL 7229746 (M.D. Fla. Dec. 8, 2020).

The crux of the Plaintiff's challenge to the ALJ's RFC determination centers around the medical opinion of Linda Bojarski, Psy. D., a psychological consultative examiner to whom the SSA referred the Plaintiff for a mental health evaluation. (R. 875–79). Dr. Bojarski examined the Plaintiff in January 2017 and thereafter authored a report setting forth the information the Plaintiff relayed to her, as well as her findings. *Id.* According to Dr. Bojarski's report, the Plaintiff advised her, in pertinent part, that he had a heroin addiction and had attended a methadone clinic from 2014 to 2016; that he had been suffering from anxiety since he stopped visiting the methadone clinic; and that he had begun experiencing depression, along with frequent bouts of crying, as of October 2016. (R. 877). Based on this and other details obtained from the Plaintiff, Dr. Bojarski found, *inter alia*, that the Plaintiff had mild deficits in his immediate memory and concentration and that his responses to structured questions aimed at assessing his judgment and common-sense reasoning skills were only correct fifty percent of the time. (R. 878). Dr. Bojarski diagnosed the Plaintiff at the end of her report with Generalized Anxiety Disorder, Adjustment Disorder with Depressed Mood, and Opioid Use Disorder in remission. (R. 879).

In his decision, the ALJ discussed Dr. Bojarski's report, including her opinion that the Plaintiff suffered from the above psychological disorders. (R. 22). Later in his decision, the ALJ also cited the opinions of two other providers—a Disability Determination Services (DDS) initial expert, Dr. Deborah Carter, Ph.D., and a

"reconsideration expert," Dr. Jennifer Meyer, Ph.D.[7]—both of whom determined that the Plaintiff had "severe mental impairments of a bipolar disorder with depression and anxiety, but with mild limitations in all domains of functioning except [the ability to] adapt and manage" himself. (R. 23). The ALJ afforded "great weight" to the assessments of Drs. Carter and Meyer "because they [were] consistent with the record." *Id.*

The Plaintiff now argues that the ALJ erred by not identifying the weight he assigned to Dr. Bojarski's opinion. (Doc. 31 at 25) (citing *McCloud v. Barnhart*, 166 F. App'x 410 (11th Cir. 2006)). The Plaintiff has a point. As noted above, in considering the evidence of record, an ALJ must state the weight he gives to medical opinions and the rationale supporting his determination so a court can ascertain whether he applied the correct legal framework. *Lawton*, 431 F. App'x at 834 (observing that an "ALJ must state with particularity the weight given to [a] medical opinion[ ] and the reasons therefor") (citation omitted).

Here, however, as the Plaintiff correctly notes, the ALJ did not ascribe *any* weight to Dr. Bojarski's opinion.[8] Such an error alone constitutes grounds for reversal

---

[7] A DDS initial expert evaluates a claimant's medical records during the SSA's initial review of the claimant's disability application, while a "reconsideration expert" serves the same function at a later stage in the process where, as here, a claimant requests review of a denial of his application. *Cf.* John E. Owen, III, *Disability Determination Services and Their Workload*, Soc. Sec. Admin., https://www.ssa.gov/oidap/Documents/Social%20Security%20Administration.%20Disability%20Determination%20Ser.pdf (last visited Feb. 28, 2022).

[8] The ALJ's failure to attribute any weight to Dr. Bojarski's assessment is peculiar since he specifically accorded weight to Drs. Carter and Meyer's opinions in the portion of his decision that immediately followed his reference to Dr. Bojarski's assessment. *See* (R. 23).

9

and remand. *See Schink*, 935 F.3d at 1269 ("[O]ur precedent holds[ that an] ALJ's 'failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal' in its own right.") (quoting *Keeton*, 21 F.3d at 1066); *McClurkin*, 625 F. App'x at 962–63 (remanding a case based on the ALJ's failure to either articulate the weight assigned to an examining physician or explain such an assignment); *McCloud*, 166 F. App'x at 418–19 (affirming the district court's decision to reverse and remand a case where "the ALJ neither explained the weight that he gave to [a consulting psychologist]'s report nor why he discredited [the consultant]'s findings regarding [the claimant]'s ability to engage in prolonged work."); *Sawyer v. Comm'r of Soc. Sec.*, 2013 WL 4495007, at *3 (M.D. Fla. Aug. 19, 2013) (reversing and remanding a case where an ALJ discussed a consultative examiner's findings, but "failed to state with particularity the weight given to [the examiner's] opinion and the reasons therefor") (citing *Winschel*, 631 F.3d at 1178–79; *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)); *Cook v. Comm'r of Soc. Sec.*, 653 F. Supp. 2d 1245, 1254–55 (M.D. Fla. 2009) (reversing and remanding a case in part because the ALJ failed to state the weight he accorded to a consultative examiner's opinion). The Commissioner does not meaningfully address this error made by the ALJ and, in fact, does not mention it at all in her memorandum.[9]

---

[9] Much of the Commissioner's response to the Plaintiff's challenge to the ALJ's RFC determination is dedicated to portions of the record which the Commissioner asserts buttress the ALJ's assessment of the Plaintiff's mental health conditions. (Doc. 31 at 25–28). This line of argument is misguided. Most, if not all, of the evidence upon which the Commissioner relies was not cited by the ALJ, and it is well settled that a court may not affirm an ALJ's decision "based on a post hoc rationale that 'might

To the extent the ALJ's deficient evaluation of Dr. Bojarski's opinion is subject to a harmless error analysis, it still fails. An ALJ's error will only be deemed harmless if it does not affect the outcome of the case. *Sarli v. Berryhill*, 817 F. App'x 916, 919 (11th Cir. 2020) (per curiam) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

Here, Dr. Bojarski's opinion included the above-described findings, as well as her observations regarding, among other matters, the Plaintiff's possible short-term memory problems, his need for Xanax on a regular basis, his long-term history of substance abuse, and his thoughts that "things would be better if he were not around." (Doc. 31 at 24) (citing R. 878). Notwithstanding Dr. Bojarski's assessments of the Plaintiff's psychological problems, the ALJ did not include any mental health limitations in his RFC or pose any hypotheticals to the VE that accounted for these issues. In turn, the ALJ relied on the VE's testimony that an individual with the Plaintiff's limitations—exclusive of any mental health restrictions—would be able to perform jobs in the national economy that exist in significant numbers. (R. 23–24). Because Dr. Bojarski's opinion may have warranted limitations in addition to those the ALJ imposed, the ALJ's failure to clearly articulate and substantiate the weight given to Dr. Bojarski's opinion cannot be considered harmless. *See Baez v. Comm'r of Soc. Sec.*, 657 F. App'x 864, 870 (11th Cir. 2016) (per curiam) (finding that an ALJ's

---

have supported the ALJ's conclusion.'" *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) (per curiam) (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

error in failing to properly consider an examining doctor's opinion was not harmless where a proper consideration of that opinion "may have demonstrated that the extent of [the claimant]'s injuries and limitations w[ere] greater than the ALJ opined").

In light of the merit of the Plaintiff's second claim of error, the Court need not consider his remaining challenges. *See Demenech v. Sec'y of Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (declining to address the claimant's remaining arguments due to the conclusions reached in remanding the case); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (stating that where remand is required, it may be unnecessary to review other claims raised) (citations omitted); *Diorio*, 721 F.2d at 729 (stating that, on remand, the ALJ must reassess the entire record).

IV.

Based on the foregoing, it is hereby ORDERED:

1.    The Commissioner's decision is reversed, and the case is remanded for further proceedings before the Commissioner consistent with this Order.

2.    The Clerk of Court is directed to enter Judgment in the Plaintiff's favor and to close the case.

3.    The Court reserves jurisdiction on the question of attorney's fees and costs pending a further motion that conforms to the District's Standing Order. *See In re: Administrative Orders of the Chief Judge*, No. 3:21-mc-1-TJC (Doc. 43) (Dec. 7, 2021).

SO ORDERED in Tampa, Florida, this 2nd day of March 2022.

*Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record